UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>JAMES R. GIBSON,<br><br>    Defendant. | Case No. 01-cr-30005-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant James R. Gibson's motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)), and its supplement (Docs. 639, 643). The Government has responded. (Doc. 645). Gibson filed a reply. (Doc. 646).

**I.    Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>   (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

1

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the

community.  U.S.S.G. § 1B1.13(2).[1]  The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

    **(A)**    **Medical Condition of the Defendant.—**
        (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
        (ii)    The defendant is—
            (I)    suffering from a serious physical or medical condition,
            (II)    suffering from a serious functional or cognitive impairment, or
            (III)    experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

\* \* \*

    **(D)**    **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release.  18 U.S.C. § 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden.  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*,

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

**II.     Analysis**

On September 21, 2005[3], this Court sentenced Defendant Gibson to a term of 480 months. (Doc. 541). On November 3, 2005, the Court ordered restitution in the amount of $83,282,767.42. A jury found Defendant guilty of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371; mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; and conspiracy to commit money laundering in violation of 18 U.S.C. § 956(h).

This case involves a lengthy history. Defendant was owner and president of SBU, Inc. and several other companies around St. Louis, MO. *United States v. Gibson*, 490 F.3d 604, 606 (7th Cir. 2007). Under the guise of a legitimate business operation, Defendant stopped buying Treasury obligations with his clients' settlement funds and instead spent over $16 million of his clients' money on unauthorized business transactions, high-risk investments, and real estate and luxury items for his own use. *Id*. The total loss of Defendant's clients was $156,194,810.92 and many of them needed the money to support themselves and fund necessary medical treatment. *Id*.

After Defendant's attorney informed him he was under government investigation for the mismanagement of client funds, him and his wife set sail to Belize and wired over $3 million of those clients' funds to Belize bank accounts. *Id*. The couple returned to the United States and went back to Belize in July 1999. *Id*.

---

[3] Defendant was originally sentenced on April 15, 2002.

Defendant was charged in March 2001 in an eight-count indictment with conspiracy to commit mail and wire fraud (Count 1), mail fraud (Counts 2-4), wire fraud (Counts 5-6), conspiracy to commit money laundering (Count 7), and a forfeiture count (Count 8). In October of the same year, Defendant's wife was added to and charged regarding the same counts (Doc. 30). Defendant was arrested in Belize on May 10, 2001, and subsequently returned to the United States. *Gibson*, 490 F.3d at 606.

Defendant pled guilty to one count of conspiracy to commit mail and wire fraud on January 8, 2002. Pursuant to the plea agreement, the government dismissed the remaining seven counts and Defendant was sentenced to 262 months' imprisonment. *Id*. at 606. Defendant appealed and the Seventh Circuit Court of Appeals vacated and remanded to the district court for further proceedings on February 26, 2004. *Id*. at 607. The Government moved to reinstate the counts of the indictment dismissed pursuant to the plea agreement and charges were reinstated on July 14, 2005. *Id*. At this time, Defendant made a credible threat that he would have District Court Judge Murphy killed and Judge Murphy was forced to recuse himself from this matter. *Id*. at fn 2. Defendant fired several count-appointed counsels and proceeded *pro se* in front of this Court. *Id*.

On May 2, 2005, the Defendant was found guilty of Counts 1-7 of the superseding indictment after a 14-day jury trial. (Doc. 463, 472). On September 21, 2005, Defendant was sentenced to 480 months' imprisonment, supervised release of three years, and ordered to pay restitution in $83,282,767.42, and a $700 special assessment. (Doc. 566). Defendant appealed and the Seventh Circuit affirmed this Court's judgment on March 6, 2007. (Doc. 595).

Defendant's projected release date is July 7, 2035, and he is currently incarcerated in FMC-Miami in Miami, FL. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited August 30, 2022). Defendant is 77 years of age.

Defendant, through counsel, argues that his health has steadily declined. (Doc. 639). He is 77 years of age and argues he has risk factors that designate him as a vulnerable person under CDC guidelines. *Id*. He argues Defendant has a history of type 2 diabetes and benign prostatic hyperplasia ("BPH")[4], cardiac arrhythmia, chronic lower back pain, macular degeneration, hypertension, obesity, anxiety disorder, and a neoplasm. (Doc. 639 at 2). Defendant suffered from a heart attack and stroke. His family notes he appears to be suffering from dementia and memory loss. *Id*. at 6. Additionally, Defendant has contracted COVID-19 on or about July 6, 2020 and developed pneumonia the next day as a result of COVID-19 and developed hypoxemia. (Doc. 639 at 7). Defendant notes concerns he may contract a variant of COVID-19. *Id*. Defendant also argues the 18 U.S.C. 3553(a) factors weigh in favor of his release.

The Court notes that no inmates or staff have tested positive for COVID-19 in FCI-Miami. Furthermore, the BOP has already administered more than 328,589 doses of a COVID-19 vaccine in total. There are currently 962 inmates at FCI-Miami, where Defendant is currently incarcerated, and it has inoculated 835 inmates, *see* BOP, COVID-19 vaccine implementation, https://www.bop.gov/ coronavirus/ (visited August 31, 2022), which will greatly reduce the threat to inmates from the disease. Additionally, at FCI-Miami there are currently 0 inmates who have tested positive for COVID-19. Additionally, 195 inmates have recovered from the virus. *See* BOP, COVID-19 Cases https://www.bop.gov/coronavirus/index.jsp (visited August 8, 2022).

The Government argues that Defendant failed to demonstrate extraordinary and compelling reasons for his release because he has refused the COVID-19 vaccination. (Doc. 645 at 10). Defendant responds and states that the vaccine was not "refused" but was declined following

---

[4] This refers to an enlarged prostate that causes urinary obstruction and leads to difficulty urinating. (Doc. 639, Ex. A).

advice of his doctors in the institution due to his poor overall health. (Doc. 646 at 3). Defendant states that the vaccine has not been subsequently offered to him nor has the advice been adjusted to him. *Id*.

The Court has reviewed the medical records and the records indicate the inmate has "refused" the vaccine. (Doc. 645, Ex. B). The medical records do not provide any explanation as to why doctors would advise against the vaccine or if they advised Defendant receive it at a later time. The Court reviews where the notation of "refused" is given in other places in the medical records. (Doc. 645, Ex. B at 26) ("He refused the use of a walker and stated he wants someone to retrieve his meal from food services."); (Doc. 645, Ex. B at 73) (Refused tooth extraction where "[i]nmate presented to clinic and advised he wished to refuse treatment."). Any other times "refused" notation is provided, it is clear that Defendant has refused the treatment against medical advice.

If Defendant indeed refused to be vaccinated, which is against the advice of the CDC, this weighs against a finding of an extraordinary and compelling circumstance to justify relief. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release."). The Seventh Circuit Court of Appeals recently discussed and affirmed the reasoning in the *Broadfield* decision. Specifically, the Seventh Circuit *rejected* defendant's request to reconsider *Broadfield*. *United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *1 (7th Cir. May 6, 2022) ("Clemons asks us to reconsider our decision in *Broadfield*, asserting that the CDC's understanding of vaccines has changed, and new variants are more likely to infect people who have been vaccinated or, like him,

previously infected."). The Seventh Circuit reiterated that "[d]espite the threat of new coronavirus variants," an inmate's risk of COVID-19 cannot justify compassionate release absent an inability to receive or benefit from a vaccine. *Id*. at *2.

Other courts within this state have stated it is "inconsistent for [a defendant] to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021). In other words, a defendant "cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine." *United States v. BaptisteHarris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021). Consequently, a refusal to be vaccinated "weighs against a finding of extraordinary and compelling circumstance to justify relief." *Garcia*, 2021 WL 1499312, at *3.

Defendant is able to refuse the vaccine. However, he cannot simultaneously claim he is high risk for the virus and may face severe complications and then refuse the vaccine, which the Centers of Disease Control and Prevention has shown to offer protection against the virus for immunosuppressed people. COVID-19 Vaccines for Moderately to Severely Immunocompromised People, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised (last visited August 8, 2022). The Court therefore cannot find that there are "extraordinary and compelling" reasons to justify releasing Defendant based on generalized fears of COVID-19.

The Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. But, stated above, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot

independently justify compassionate release . . . " *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). While *Broadfield* was issued before the rise of the Omicron variant of the COVID-19 virus, *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), the Court notes that the BOP has reported there are 0 inmates who have tested positive for the virus in FCI-Miami.

If Defendant has indeed been instructed not to receive the vaccine in accordance with medical advice, the Court will *strongly recommend* that BOP administer the vaccine and any booster shots in accordance with CDC guidelines. The BOP has assured and certified that the vaccine and any booster shots have been made available to federal inmates. https://www.bop.gov/coronavirus/ ("BOP remains committed to making the vaccine available to all staff and inmates who wish to receive it. Both staff and inmates were afforded an opportunity to receive the vaccine when it was first available. In particular, vaccinating staff protects fellow staff, inmates at the facility, and the community. Vaccine doses are available at each location for newly-admitted and existing inmates. Inmates have also been offered booster shots in accordance with CDC guidance.").

While fear of COVID-19 cannot independently justify compassionate release, and Defendant's refusal to be vaccinated weights *against* granting compassionate release, the Court considers whether or not Defendant's other health concerns can justify compassionate release. However, even if Defendant is not vaccinated in accordance with medical advice, his medical reasons – namely his Type 2 diabetes, enlarged prostate, hypertension, advanced age, and dementia do not justify release. First, the Court, upon review of his medical records show that his only visits to health professionals are related to his chronic low back pain, hernia, and his enlarged prostate. The Government is correct that none of these conditions have been recognized by the CDC has making an individual sicker or more at risk from COVID-19.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 31, 2022).

The Government contends that Defendant does not have diabetes but there is evidence in his medical records that Defendant does. (Doc. 645, Ex. B at 92); (Doc. 639, Ex. A at 1). While diabetes is a risk factor for COVID-19, his ability to get vaccinated and boosted would protect him against COVID-19. If, like the Court mentions above, he is in fact medically unable to get the vaccine (which as noted above, the Court doubts), a risk factor of diabetes and hypertension for COVID-19 does not justify a compelling reason to release Defendant. *United States v. Kurzynowski*, 17 F.4th 756, 759 (7th Cir. 2021) (affirming denial of compassionate release where defendant had hypertension, diabetes, and obesity).

Additionally, the Court notes that there is no evidence of his dementia or memory loss in any health care visit or examination conducted in the records provided. Without documentation from any health care provider or evidence in the medical records, the Court does not consider that Defendant indeed is suffering from the memory loss or dementia. The rest of Defendant's ailments such as chronic backpain, an enlarged prostate, and hernia are not so "extraordinary and compelling" to justify release.

Even though the Court finds that there is no extraordinary and compelling reason that warrants release, the Court will still evaluate how the § 3553 sentencing factors weigh against release. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("Because Ugbah cannot establish an extraordinary and compelling reason for release, it was unnecessary for the district judge to consider the § 3553(a) factors at all."). The Court believes it is still important for Defendant to serve out the remainder of his sentence in prison because of the seriousness of his offenses. This Defendant defrauded many victims out of millions. I stated at Defendant's sentencing, "[t]he loss

amounts in this case do not fully capture the harmfulness and seriousness of the conduct as you caused psychological harm and emotional trauma to the victims who relied on these funds for their medical treatment and for their necessary monthly expenses." (Doc. 598 at 81-82).  The Court still strongly believes in this statement today. Defendant built his own wealth off of taking advantage of over 180 victims. He bought real estate and luxury items with victims' money, and even traveled to Belize to avoid taking responsibility for his actions. He left several victims with no money to pay medical bills or home care. Orphaned children who depended on the money for support as their parents died did not have money to pay for their education. The psychological harm that the probation officer's investigation detailed upon victim interviews still is as impactful on that day as it is today. Additionally, Defendant made his own daughter complicit in his crimes and left her with a felony record. Additionally, Defendant made a credible threat against the life of a sitting federal judge.

> As this Court stated during the sentencing:
>
>> Besides the pain and suffering you have caused the people who put their trust in you, another sad part is that you will go to your grave truly believing that you did nothing wrong and committed no crime. You were a fiduciary who had the highest degree of trust, care and obligation under the law, and you violated and breached that duty. You are a criminal and a danger to the public who could still be victims of your illegal fraudulent financial schemes if and when you ever get out of prison.

*Id*. at 90-92. To this day, Defendant has not demonstrated any remorse for the harm he has caused victims and society. The Court, even with the Defendant's age, is concerned with his ability to reoffend and believes he is still a danger to the public. The 3553(a) factors weigh strongly against release and for Defendant to serve the remainder of his sentence.

### III. Conclusion

For these reasons stated above, the Court **DENIES** Defendant's Motion for Compassionate Release (Doc. 639). If the Defendant is not yet vaccinated against COVID-19, the Court *strongly*

*recommends* BOP prioritize giving Defendant the vaccine.

**IT IS SO ORDERED.**
**DATED: September 1, 2022**

                                                **/s/ J. Phil Gilbert**
                                                **J. PHIL GILBERT**
                                                **UNITED STATES DISTRICT JUDGE**